No. 12,627.

THE PEOPLE *v.* STANLEY.

(9 P. [2d] 288)

Decided February 29, 1932.

Mr. J. Arthur Phelps, Mr. H. W. Allen, Mr. Robert E. Winbourn, Attorney General, Mr. John S. Underwood, Attorney General, Mr. Sidney P. Godsman, Assistant, for the people.

Mr. Fred A. Sabin, for defendant in error.

*En Banc.*

Mr. Justice Alter delivered the opinion of the court.

Dean Stanley pleaded not guilty to an information, in three counts, in which he was charged with the violation of the provisions of "An act in relation to the inspection of the picking, packing, shipment and sale of cantaloupes and melons grown in Colorado for human consumption and making appropriation therefor," being chapter 95, Session Laws of Colorado, 1925, as amended by chapter 101, Session Laws of Colorado, 1927. The three counts charged defendant with the sale, offering for sale, shipment and placing upon the market of: (a) Uninspected and uncertified cantaloupes and melons; (b) cantaloupes and melons which had been inspected, but which had been rejected by the inspector; and (c) cantaloupes and melons which defendant falsely represented to have been inspected and certified.

Defendant demurred to the information and the several counts thereof because: (1) The statute, under which the information and the several counts thereof purport to have been drawn, is unconstitutional and void for numerous reasons set forth in the demurrer which will hereinafter be classified and discussed; and (2) because there is no statutory or common law authority in the state of Colorado defining as a crime the matters and things set forth in the information and various counts thereof.

The demurrer was sustained, and the district attorney,

by authority of section 7113, C. L. 1921, prosecutes this writ.

The following sections of the statute, Session Laws of Colorado, 1925, chapter 95, are involved in the determination of this action:

"Section 1. It shall be unlawful for any person, * * * to sell, ship or offer for sale or shipment, or place upon the market for human consumption, any cantaloupes or melons grown within this State, unless the same shall be first certified as to maturity, and fitness of condition for shipment, by a regularly appointed inspector, under the provisions of this act.

"Section 2. * * * All disputes concerning inspection of cantaloupes or melons shall be *finally adjusted* by the State Inspector. * * *.

"Section 3. The State Inspector of Cantaloupes and Melons, or his deputy or assistants, shall inspect, examine and certify all cantaloupes and melons grown within this State for human consumption *so far as possible or practicable.* * * *.

"Section 6. The State Inspector or his deputy or assistants, *may in their discretion* keep under their care and supervision any or all of the cantaloupes or melons which have been inspected and rejected by them, for a period of forty-eight hours." (Italics in above sections are ours.)

Section 5 of the 1925 Act, supra, which is unaffected by the 1927 amendatory Act, supra, makes the violation of any provisions of the act a misdemeanor, punishable as therein provided.

█ After considering the briefs and examining the authorities therein cited and others, we have concluded that it is necessary to discuss but one of the many objections to the constitutionality of the act under consideration, i. e., that it does not provide for or fix a standard, whereby the inspector or the grower of cantaloupes and melons may determine the right and duty of certifying the same, but it reposes in the inspector absolute and

arbitrary power to certify or not, and is therefore violative of the due process of law and equal rights provisions of both the United States and Colorado Constitutions.

It must be conceded that the statute itself sets forth no standard by which the inspector or the grower may determine when either cantaloupes or melons have reached that stage of "maturity, and fitness of condition for shipment" which imposes upon the inspector the duty of certifying the same or which entitles the grower to the right of demanding that service; and it must also be conceded that the act itself is silent as to any provision or authorization by which a standard may be fixed. The statute furnishes no guide, establishes no standard, sets forth no rule or regulation, provides no limitation, and consequently imposes no duty upon the inspector for the performance of which the grower may legally insist. The finding of that condition of "maturity, and fitness of condition for shipment" which entitles the grower to the inspector's certification is left entirely with the inspector, without rule, regulation, standard or specification, and he may, if so minded, exercise the authority with which the statute attempts to clothe him in a purely partial and discriminatory manner; he may certify the cantaloupes and melons of one grower and refuse certification to another whose crop is in the same identical condition. The inspector is invested with an unlimited and uncontrolled discretion; he may withhold his certification without restraint and without responsibility, and yet the grower cannot sell or ship his most excellent product without certification because by so doing he becomes a criminal, if the statute is valid.

It cannot be said that the work of inspecting cantaloupes and melons is of such a technical nature or so intricate that it cannot be prescribed by definite rules, regulations, specifications, classifications and standards (See California Statutes and Amendments to the Codes, 927, pages 1845, et seq.). Under these circumstances, the

general rule is that a statute which attempts to vest in public officials arbitrary discretion and unlimited power with respect to a lawful business, without prescribing uniform rules and regulations, so that the officials as well as those affected thereby may govern themselves accordingly, is unconstitutional as violative of the provisions of the United States and Colorado Constitutions with respect to due process of law and equal rights and privileges. *Yick Wo v. Hopkins,* 118 U. S. 356, 366, 368, 6 Sup. Ct. 1064; *Walsh v. City of Denver,* 11 Colo. App. 523, 526, 527, 53 Pac. 458; *City of La Junta v. Heath,* 38 Colo. 372, 375, 88 Pac. 459; *Curran Co. v. City of Denver,* 47 Colo. 221, 236, 107 Pac. 261; *Weicker Co. v. City Council of Denver,* 75 Colo. 475, 476, 226 Pac. 857; *North v. Board of Education,* 313 Ill. 422, 145 N. E. 158; *State of Washington v. Roberge,* 278 U. S. 116, 121, 49 Sup. Ct. 50; *City of Evansville v. Gaseteria, Inc.,* 51 Fed. (2d) 232. See, also: *State ex rel. Makris v. Superior Court,* 113 Wash. 296, 193 Pac. 845, and notes thereto and cases cited in 12 A. L. R. 1428, 1436; *State ex rel. Altop v. City of Billings,* 79 Mont. 25, 255 Pac. 11, and notes thereto and cases cited in 54 A. L. R. 1091, 1104; Rose's Notes on U. S. Reports, vol. 13 (Revised), 541 et seq.; Rose's Notes on U. S. Reports, vol. 2 (Supplement), 1016 et seq.

The trial court correctly held the statute in question unconstitutional, and accordingly the judgment is affirmed.